Exhibit D

## EMPLOYMENT AGREEMENT

This Agreement is made by and between Sharrow Engineering, Inc. and Robert Morehardt.

## SECTION 1
## RECITALS

**1.1    Summary**. Sharrow Engineering, Inc. is a nautical and aeronautical engineering company, dedicated to research, development and manufacture of revolutionary high performance propulsor technologies for the maritime and aeronautical industries (Business Enterprise). Robert Morehardt possesses special skills, knowledge, abilities and experience related to the manufacturing portion of the Business Enterprise. Sharrow Engineering, Inc. is relying on these talents in making this Agreement with Robert Morehardt.

**1.2    Consideration**. In consideration of the mutual promises and covenants set forth hereafter, Sharrow Engineering, Inc. and Robert Morehardt agree as follows.

## SECTION 2
## DEFINITIONS

**2.1    Defined Terms**. As used in this Agreement, the following terms shall have the following meanings:

(a)    **Agreement** shall refer to this Employment Agreement, and any amendment.

(b)    **Base Salary** means Thirty Six Thousand Dollars ($36,000.00) paid on an annual basis.

(c)    **Code** shall refer to the Internal Revenue Code of 1986, as amended.

(d)    **Company** shall refer to Sharrow Engineering, Inc., a Delaware corporation, its successors and assigns.

(e)    **Competitive Products or Services** shall mean any product or component thereof, product line or service that has been or is being designed, developed, utilized, marketed, supplied, sold or provided by any person other than the Company and that is of the same general type, performs a similar function, or is used for the same general purpose as a Company product or component thereof, product line or service offered by the Company.

(f)    **Effective Date** shall mean November 1, 2024.

(g)    **Employee** shall refer to Robert Morehardt, his personal representative, heirs, successors and assigns.

1

       (h)    **Person** shall include an individual, association, unincorporated organization, corporation, partnership, limited liability company, limited liability partnership, joint stock company, trust, joint venture, and a governmental entity or any department, agency or political subdivision thereof.

       (i)    **Proprietary Information** shall mean any information of the Company (whether written or oral), trade secrets of or relating to the Company, including, without limitation, information with respect to the Company's past, present, and planned operations, processes, protocols, products, inventions, technical data, know-how, formulae, improvements, patterns, manufacturing methods, designs, program data, patent data, computer programs, computer software and documentation, research and development projects and studies, services, business practices or strategies, financial data, sales and marketing methods, plans or proposals, market studies, costs, pricing, profits, contractual relationships, regulatory status, actual or potential business partners, vendors, suppliers, or customers (including customer lists and preferences), personnel data about Company employees (including salaries), and other information of a similar nature relating to the Company as well as information provided to the Company by third parties on a confidential basis. Confidential and Proprietary Information does not include any information that the receiving party can establish:

       (1)    is or becomes generally available to and known by the public (other than as a result of an impermissible disclosure directly or indirectly by the receiving party or its affiliates, advisors, or representatives);

       (2)    is or becomes available to the receiving party on a nonconfidential basis from a source other than the furnishing party or its affiliates or representatives, provided that such source is not and was not bound by a confidentiality agreement with, or other obligation of secrecy to, the furnishing party of which the receiving party has knowledge; or

       (3)    has already been or is hereafter independently acquired or developed by the receiving party without violating any confidentiality agreement with, or other obligation of secrecy to, the furnishing party.

       (j)    **Related Employer** means the Company and all persons with whom the Company would be considered a single employer under Code Section 414(b) or (c).

       (k)    **Restrictive Period** shall mean the day coinciding with the date of Separation of Service and the twenty-four (24) consecutive calendar month period following the month in which Separation from Service occurs.

       (l)    **Separation from Service or Separates from Service** shall mean that the Company and Employee reasonably anticipate that no further services would be performed after a certain date or that the level of bona fide services the Employee would perform after such date, whether as an employee or independent contractor, would permanently decrease to no more than twenty percent (20%) of the average level of bona fide services performed, whether as an employee or an independent contractor, over the immediately preceding thirty-six (36) month

period, or the full period of services to the Company if the Employee has been providing services to the Company for less than thirty-six (36) months.

        (m)    **Successor in Interest** shall mean any person legally acting in a fiduciary capacity on behalf of Employee, including but not limited to a representative appointed by a court of competent jurisdiction or designated by the Employee under a durable power of attorney or its equivalent, or the personal representative or executor of Employee's estate.

        **2.2**    **Interpretation**. Except as otherwise expressly provided, the following rules of interpretation shall apply to this Agreement:

        (a)    The singular includes the plural and the plural includes the singular except when the context otherwise requires.

        (b)    The masculine, feminine or neuter gender shall also mean all or any of the other genders except when the context otherwise requires.

        (c)    Capitalized words and phrases used in this Agreement shall have the meaning given to them in Section 2.1, unless the language or context clearly indicates that a different meaning is intended.

        (d)    A reference to a law includes any amendment or modification to such law and any rules or regulations issued thereunder.

        (e)    The recitals as set forth in this Agreement are incorporated as material terms of this Agreement.

        (f)    All exhibits and schedules attached to this Agreement are expressly made a part of this Agreement.

        (g)    This Agreement was prepared and negotiated by all the parties to this Agreement, and all provisions contained in this Agreement shall be construed without prejudice to the party that actually memorialized this Agreement in final form. This Agreement shall be considered to be drafted by all the parties to this Agreement.

        (h)    Notwithstanding any provision of this Agreement to the contrary, the obligation to make payments and the time and form of those payments as required by this Agreement that constitute deferred compensation for purposes of Code Section 409A and which are not otherwise exempt from Code Section 409A are intended to comply with Code Section 409A and the interpretive guidance thereunder. This Agreement will be construed and interpreted with such intent. A right to a series of payments shall be treated as a right to a series of separate payments. If any provision of this Agreement needs to be revised or restricted to the extent and in a manner necessary to be in compliance with the requirements of Code Section 409A, then such provision shall be modified or restricted to the extent necessary to be in

compliance with the requirements of Code Section 409A and any modification will attempt to maintain the same economic results as were intended under this Agreement.

## SECTION 3
## SERVICES

**3.1    Services to be Performed**. The Company employs Employee as the Director of Manufacturing of the Company's operations. Services to be performed include the full authority and responsibility for overseeing all aspects of the Company's manufacturing operations, quality and compliance and financial and resource management. Manufacturing operations shall include oversite of daily manufacturing operations, ensuring production schedules are met, implementation of continuous improvement methodologies to optimize processes and reduce cost. Quality and compliance shall include ensuring compliance with safety, environmental, regulatory and industry standards, and coordination with quality assurance functions to meet or exceed product specifications. Financial and resource management functions include development and management of operating budgets, forecasts, and capital expenditures, monitoring key performance metrics and optimization of labor and resource utilization. The services of the Employee shall be subject to the general direction and approval of the Company's Board of Directors. The Employee shall report to the Company's Chief Executive Officer.

**3.2    Duties and Obligations of the Employee**. The Employee agrees to the following duties and obligations:

       (a)    To render such services at such place or places as the Company's Board of Directors may designate or as the interests, needs, business or opportunities of the Company shall require. The Employee acknowledges that travel will be required in the course of performing the Employee's duties for the Company.

       (b)    To observe and conform to any work rules and regulations which are now in force or which may be adopted by the Company. The Employee shall be subject to and shall abide by all resolutions and policies adopted by the Board of Directors.

       (c)    Accept such additional office or offices to which the Employee may be elected or appointed by the Board of Directors of the Company.

**3.3    Duties and Obligations of the Company**. The Company agrees to provide the Employee necessary information concerning the operation of the Company's business to effectuate management and control operations. The Company shall indemnify the Employee to the extent provided in the Company's governance documents, including without limitation, articles and by-laws, as amended from time to time.

**3.4    Best Efforts and Other Employment**. The Employee agrees to the following:

4

(a)      That during the term of this Agreement, the Employee will faithfully, diligently and to the best of the Employee's ability and talent, do and perform all acts and duties in connection with the express and implicit terms of this Agreement.

(b)      Except as otherwise noted in Schedule 1, he will not, directly or indirectly, engage or become involved in any other business or enterprise or serve on the governing body of any other entity, including, without limitation, any association, corporate, civic or charitable organization, without obtaining written consent of the Company's Board of Directors. Notwithstanding the foregoing provision, nothing contained in this Agreement shall be construed to prevent the Employee from investing any personal assets or monies in such form or manner the Employee shall determine so long as those investments do not require the expenditure of the Employee's time in the operation of the affairs of any business or enterprise in which the investment is made or would violate Section 7.1.

**3.5**     **Representations by the Employee**. The Employee represents and warrants to the Company the following. The Employee acknowledges that the Company will rely upon these representations and warranties as to their accuracy and truthfulness.

(a)      The execution and delivery of this Agreement by the Employee and the performance by the Employee of the Employee's duties and obligations in accordance with this Agreement does not and shall not constitute a breach of, conflict with, or otherwise contravene or cause a default under the terms of any other agreement or policy to which the Employee is subject.

(b)      The Employee has no information, including without limitation, confidential, proprietary or trade secrets relating to any Person, which would prevent, or be violated by the Employee entering into or performing pursuant to this Agreement.

(c)      The Employee is not bound by any employment, consulting, non-compete, confidentiality, trade secret or similar agreement.

### SECTION 4
### FINANCIAL TERMS

**4.1**     **Base Salary**. For all services to be rendered by the Employee in any capacity under this Agreement, the Company shall pay to the Employee an amount equal to the Base Salary.

**4.2**     **Incentive Compensation**. The Employee shall be entitled to participate in any incentive compensation plan, bonus arrangement or other nonqualified deferred compensation program maintained by the Company from time to time for the benefit of the Employee or the officers of the Company, subject to the applicable eligibility and participation requirements of any such incentive arrangement.

**4.3    Payroll Practices**. The amounts paid pursuant to this Agreement shall be subject to all applicable Federal, State and local withholding and employment taxes, rules and regulations and the Company's regular payroll practices.

## SECTION 5
## FRINGE BENEFITS

**5.1    Employee Benefits**. The Employee shall be entitled to participate, subject to applicable eligibility and participation requirements, in any pension or retirement arrangements, employee health, welfare or fringe benefit plans or arrangements that are made available by the Company to the senior officers of the Company.

**5.2    Expenses**. The Company will reimburse Employee for all reasonable and necessary expenses incurred by the Employee in the performance of the Employee's duties under this Agreement upon the presentation by the Employee to the Company of an itemized account of such expenditures, including receipts where appropriate. All reimbursements shall be subject to the Company's approval and expense reimbursement policy. Notwithstanding the foregoing to the contrary, reimbursement of expenses shall not exceed thirty thousand dollars ($30,000.00) in a calendar year.

**5.3    Paid Time Off**. The Employee shall be entitled to paid time off as provided in the Company's policies and procedures with respect to paid time off. The accrual and carryforward of paid time off shall be subject to the Company's employment policies and procedures. If the employment of the Employee shall terminate, then the Employee may not utilize any otherwise available leave time during the last sixty (60) days of the Employee's employment; provided that if the employment of the Employee shall terminate at any time in which the Employee shall have not fully utilized paid time off, then the Company shall remit to the Employee an amount equal to the per diem compensation calculated at the Employee's Base Salary rate as of the date that such personal leave was earned, multiplied by the number of earned but unused days of personal leave time.

## SECTION 6
## TERM OF EMPLOYMENT

**6.1    Commencement Date**. This Agreement shall commence on the Effective Date and shall continue until terminated as provided in Section 6.2.

**6.2    Termination Date**. This Agreement shall terminate on the earliest of the following events to occur.

(a)    Voluntary Separation from Service by the Employee upon no less than sixty (60) days prior written notice.

(b)    Voluntary Separation from Service by the Employee with prior notice.

(c)    Upon the death of the Employee.

(d)    Separated from Service at any time by written notice to the Employee by the Company, with or without reason or prior notice.

**6.3    Effect of Termination**. Subject to Section 6.4, upon termination of this Agreement, the Company shall pay to the Employee or the Employee's Successor in Interest the following, as full settlement of the obligations due to the Employee. The payment or reimbursement of the amounts described in this Section shall commence with the next payroll period coinciding with or immediately following the thirty-fifth (35th) day following the Separation from Service.

(a)    If this Agreement is terminated for any reason described in Section 6.2, all compensation established in Section 4.1 or which may be payable as a fringe benefit, as described in Section 5 and which has been earned and vested but is unpaid as of the date of the Separation from Service. Any such amount shall be paid in a lump sum.

(b)    If this Agreement is terminated for any reason in Section 6.2, the Company shall pay any amount owed pursuant to any plan or program described in Section 4.2. Any such amount shall be paid in accordance with the terms and conditions of any plan, program or arrangement.

(c)    In the event that this Agreement is terminated pursuant to Section 6.2(a) then, in addition to the amounts, if any, described in Sections 6.3(a) and (b), the Company shall pay or reimburse the Employee for COBRA continuation coverage for period that the Employee is eligible to receive COBRA continuation coverage but in no event for more than three (3) months of COBRA continuation coverage. For purposes of determining when employer provided benefits ceases for purposes of triggering COBRA continuation coverage, the employer provided benefits shall terminate at the end of the calendar month in which the termination occurs. In the event that any amount becomes payable pursuant to this Section 6.3(c), such amount shall be suspended and paid as a lump sum at the end of the period described in Section 6.4, provided the release has become irrevocable. If this Agreement is terminated as described in Section 6.2(b), the Employee shall not be entitled to payment or reimbursement of the cost of COBRA continuation coverage as provided in this Section 6.3(c).

**6.4    Release**. The payment of any amount described in Section 6.3 is conditioned upon the Employee's execution of a general release in substantially the form of Exhibit 1, together with any such amendments as may be necessary to ensure the release is enforceable to the fullest extent provide by law, and the release has become irrevocable in accordance with applicable law. If the release is not timely executed or is revoked by the Employee, the payment of the amounts described in Section 6.3 shall be forfeited.

**6.5    Resignation**. In the event of termination of this Agreement other than upon Employee's death or Total Disability due to mental incompetence, the Employee hereby agrees to resign from all positions held with the Company or a Related Employer, including without limitation, any position as a director, officer, agent, trustee, or consultant to the Company or a

7

Related Employer.

## SECTION 7
## RESTRICTIVE COVENANTS

**7.1    Non-competition.** Except as set forth in Schedule 1, the Employee agrees that during the term of this Agreement and the Restrictive Period, the Employee will not directly or indirectly, or through the ownership of a corporation, partnership, limited liability company, limited liability partnership, proprietorship, or any other entity, or through employment as an employee, independent contractor, director, member, consultant, or otherwise, perform any of the following activities within the United States, or any other geographic area in which the Company marketed during the term of the Employee's employment or in which the Company has, during the term of the Employee's employment, engaged in planning to market or acquire any product or component thereof, product line or service of the same general type, function or use and where the Employee has management duties.

(a)    Acquire or hold an interest in (including, without limitation, through the investment of capital or lending of money or property), or manage, operate or otherwise render services of a competitive nature to, any person, whether on her own or in association with others, that engages in (either directly or through any subsidiary or affiliate thereof) any business or activity relating to the design, development, manufacture, engineering, building, marketing, supply, sale or provision of a Competitive Product.

(b)    The Employee shall be permitted to acquire a passive stock or equity interest in a publicly traded company which may otherwise have been restricted under Section 7.1, provided that such stock or other equity interest acquired is not more than five percent (5%) of the outstanding interest in such company.

**7.2    Proprietary Information.** The Employee recognizes that the Company values and vigorously protects its Proprietary Information and that the Employee is in a senior executive role with the Company that allows the Participant significant access to such Proprietary Information in all aspects of the Company's business.

(a)    Except as required by his duties to the Company or unless the Employee shall first secure the Board of Directors written consent, the Employee agrees that he shall not during the term of his employment or subsequent to the termination of this Agreement, utilize, disseminate, disclose or communicate to any person or entity, either directly or indirectly, orally or in writing, or under any circumstances, any Proprietary Information disclosed to the Employee or obtained by the Employee during the term of this Agreement.

(b)    Employee agrees to undertake all necessary and appropriate steps to ensure that the Proprietary Information disclosed to or in the possession of the Employee will be kept confidential.

(c)     Upon termination of this Agreement, Employee agrees to promptly deliver to the Company all documents, records, data compilations and similar repositories of, or containing Proprietary Information, regardless of the medium of storage, provided and furnished by the Company to the Employee or obtained by the Employee during the course of the Employee's employment. Employee agrees not to make or retain copies or extracts from any such document or data compilation.

**7.3     Non-solicitation of Company Employees.** The Employee agrees that, during the Employee's employment with the Company and for the Restrictive Period, the Employee shall not, directly or indirectly, either for himself or on behalf of any other person:

(a)     solicit any person who is an officer, general manager or director or equivalent or more senior level employee of the Company or Related Employer who was employed by the Company at any time during the six (6) month period immediately prior to the date of the Employee's Separation from Service or who thereafter becomes employed by the Company, or

(b)     participate in any way in a decision to retain the services of a person described in Section 7.3(a) in any capacity for any person other than the Company.

**7.4     Non-solicitation of Company Vendors.** The Employee agrees that, during the Employee's employment with the Company and for the Restrictive Period, the Employee shall not, directly or indirectly, either for himself or on behalf of any other person:

(a)     call upon or solicit the business of any person who is or who had been at any time during the six (6) month period immediately prior to the date of Separation from Service, a customer, supplier or vendor of the Company and with whom the Employee had contact or about whom the Employee obtained Proprietary Information while employed with the Company (provided that the Employee may contact any such supplier or vendor where such contact does not relate to a Competitive Product or Service), or

(b)     divert business, supplies, services or materials from, or otherwise interfere with, the Company's business relationship with any of the Company's customers, suppliers or vendors using any Proprietary Information of the Company.

**7.5     Non-disparagement.** The Employee agrees not to disparage the Company, any of its products or practices, or any of its directors, officers, agents, representatives, equity holders or Related Employers, either orally or in writing, at any time; provided that the Employee may confer in confidence with the Employee's legal representatives and make truthful statements as required by law.

**7.6     Reasonableness.** The Employee has carefully read and considered the restrictions contained in this Section 7, and having done so, agrees that the restrictions set forth in this Section 7 including, but not limited to, the scope of the employment, the period of time of the restriction and geographical area of the restriction are fair and reasonable and are reasonably required for

the protection of the interests of the Company and Related Employers. If the restrictions set forth in this Section 7 are found by any court having jurisdiction to be unreasonable because they are too broad in scope, duration, geographic area designated or the type of employment or line of business, or as to all of them, then such restrictions shall nevertheless remain effective, but shall be considered amended as to such time, area, or type of employment or line of business as may be deemed reasonable and enforceable by such court.

7.7   **Enforcement**. The Employee recognizes and acknowledges that a breach of the covenants contained in this Section 7 will cause irreparable damage to the Company and its goodwill, the exact amount of which will be difficult or impossible to ascertain, and that the remedies at law for any such breach will be inadequate. Accordingly, the Employee agrees that in the event of a breach of any of the covenants contained in this Section 7, in addition to any other remedy which may be available at law or in equity, the Company will be entitled to specific performance and injunctive relief. Employee hereby waives any right to require the Company to post a bond, cash or other surety for such injunctive relief, and further agrees not to oppose the Company's petition for injunctive relief on grounds that monetary damages are sufficient and that equitable relief is therefore not warranted, and Employee hereby waives any such defense. The prevailing party in any action to enforce the provisions of this Section 7 shall be entitled to recover its costs and attorneys' fees from the other party.

7.8   **Responses to Lawful Inquiry**. The Employee may respond to a lawful and valid subpoena or other legal process but shall give the Company notice thereof within five (5) calendar days of receipt of such subpoena or process, and shall, as much in advance of the return date as possible, make available to the Company and its counsel the documents and other information sought, and shall assist such counsel in objecting to, resisting or otherwise responding to such process as the Company deems appropriate.

7.9   **Disclosure of Restrictive Covenants**. Prior to accepting other employment or any other service relationship, the Employee shall provide a copy of this Section 7 to any recruiter who assists the Employee in obtaining other employment or any other service relationship and to any employer or other person with which the Employee discusses potential employment or any other service relationship.

7.10   **Consideration**. Consideration for this Section 7 has been separately bargained for. In the event that Employee shall breach this Section 7, in addition to all other remedies available to the Company, the Employee shall forfeit all future payments due under this Agreement.

7.11   **Survival**. Notwithstanding any provision of this Agreement to the contrary, this Section 7 shall survive the termination of this Agreement.

## SECTION 8
## MISCELLANEOUS

**8.1    Expense.** Each party to this Agreement shall bear its own expenses incurred in connection with the negotiation and consummation of the transactions contemplated under this Agreement.

**8.2    Notice.** Any notice to be given pursuant to this Agreement shall be written and shall be either hand-delivered, sent by registered or certified mail, with postage prepaid, or sent by express delivery, to the address set forth below, or to such other address as either party may from time-to-time designate by notice given as provided by this subsection. Notice hereunder shall be deemed to have been received by the person to whom addressed at the time it is personally delivered or forty-eight (48) hours after it is deposited in the United States mail as specified above.

If to the Company:

Sharrow Engineering, Inc.
c/o _____

_____

_____

If to the Employee:

Robert Morehardt

_____

_____

**8.3    Computation of Time.** Whenever any determination is to be made or action to be taken on a date specified in this Agreement, days shall refer to all calendar days, except if such date falls on a Saturday, Sunday or a legal holiday of the United States or the state whose laws govern this Agreement, then the date for such determination or action shall be extended to the next business day immediately thereafter. In computing any period of time, the day of the act or event from which the designated period of time begins to run shall not be included, but the time shall begin to run on the next succeeding calendar day. The last day of the period so computed shall be included, unless it is a Saturday, Sunday or legal holiday, in which event the period shall run until the next calendar day which is not a Saturday, Sunday or legal holiday.

**8.4    Assignment.** Neither this Agreement, nor any rights or obligations under this Agreement, may be assigned by the Employee without the prior written consent of the Company. The Company may freely assign this Agreement, without providing notice or obtaining the consent of the Employee.

**8.5    Complete Agreement.** This Agreement represents the entire agreement of the parties, and supersedes any and all prior or contemporaneous agreements, concerning this subject matter, whether written, unwritten, express or implied. The parties acknowledge that there are no oral representations, understandings, or agreements relating to this Agreement which are not fully expressed herein.

11

**8.6    Severability of Provisions.** Any provision of this Agreement which is determined to be invalid or unenforceable, shall not affect the remainder of this Agreement, which shall remain in effect, unless the removal of the invalid or unenforceable provision would substantially defeat the basic intent, purpose and spirit of this Agreement.

**8.7    Extension, Modification and Waiver.** This Agreement may be modified or amended only by the written agreement of the parties. No waiver of any breach of any provision of this Agreement shall constitute a waiver of any preceding or succeeding breach of the same provision. No extension of the time for performance of any obligation or other act shall be deemed to be an extension of the time for the performance of any other obligation or any other act.

**8.8    Governing Law.** This Agreement shall be construed and enforced according to the laws of the State of Michigan except to the extent that such laws are preempted by the laws of the United Sates, in which case the laws of the United States shall apply.

**8.9    Survival of Terms.** Termination or expiration of this Agreement for any reason shall not release any of the parties from any liability or obligation described in this Agreement which has been expressly agreed to survive any such termination or expiration, or remains to be performed, or by its nature would be intended to be applicable following any such termination or expiration. Section 7 shall survive the termination or expiration of this Agreement.

**8.10    Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement. The counterparts of this Agreement may be executed and delivered by facsimile or other electronic means by the Company and the Employee, and the Company and Employee may rely on the receipt of such document so executed and delivered by facsimile or other electronic means as if an original had been received.

**8.11    Legal Representation.** The Employee acknowledges that she has been advised to seek the advice of independent legal counsel and has had the opportunity to seek the advice of independent legal counsel regarding the terms and conditions of this Agreement.

**SECTION 9**
**EXECUTION**

This Agreement is signed and dated as indicated below but shall be effective as of the Effective Date.

Company:                              Employee:

By: _____          By: _____

Its: President                         Robert Morehardt

Dated: _____, 2025          Dated: _____, 2025

**SCHEDULE 1**
**EXCEPTED EMPLOYMENT**

## EXHIBIT 1
## RELEASE

This Release is made by and between Sharrow Engineering, Inc. (Company) and Robert Morehardt (Employee) and collectively referred to as Parties.

## SECTION 1
## RECITALS

**1.1    Summary**. This Release is given pursuant to the Employment Agreement (Agreement).

**1.2    Incorporation**. A defined term used in this Release shall be given the same meaning as the term is defined in the Agreement.

## SECTION 2
## RELEASE

**2.1    Payment Event**. The Employee has experienced a Separation from Service as described in the Agreement and the Employee has become entitled to a payment pursuant to the Agreement subject to, among other things, the execution of this Release.

**2.2    Release**. In exchange for the amounts which may be payable, as described in the Agreement, the Employee, and any person or representative claiming through the Employee, releases and forever discharges the Company, its parent company, subsidiaries, and affiliated organizations, successors and assigns and its/their past and present members, managers, directors, officers, employees, agents, attorneys, benefit plans and plan administrators, sureties and insurers (collectively "Released Parties") from all claims, liabilities, demands, costs, attorney fees, causes of action and damages, including all consequential and incidental damages, whether known or unknown, arising from the beginning of time to the date of this Release, including without limitation those relating directly or indirectly to Employee's employment with the Company, and all claims for personal injury, defamation, breach of contract, wrongful discharge, violation of due process or civil rights and violation of any federal, state or local statute, law or ordinance and the common law, including without limitation violation of the Employee Retirement Income Security Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, the Fair Labor Standards Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Equal Pay Act, including any similar state or local law, and/or any federal, state or local law regarding discrimination.

(a)     This Release shall not extend to claims:

(1)     with respect to rights to or distributions from any qualified retirement plan to which the Employee would be entitled, if any (distributions from any qualified retirement plan shall be made to the Employee in accordance with the terms and conditions of the qualified retirement plan making the distribution);

(2)    with respect to the rights under the Change in Control Agreement between the parties;

(3)    benefits pursuant to COBRA or similar laws providing for the continuation of health care benefits, if applicable; or

(4)    arising out of a breach of the Agreement.

(b)    It is understood and agreed by the Employee that the facts and respective assumptions of law in contemplation of this Release may hereafter prove to be other than or differ from those facts and assumptions now known, made or believed by them to be true.  Employee expressly accepts and assumes the risks of the facts and assumptions to be so different.  Except as otherwise provided in this Release, Employee agrees that all terms of this Release shall be in all respects effective, complete and not subject to termination or rescission by any such difference of facts or assumptions of law.

2.3    **Final Release**.  Employee agrees and understands that except for the exceptions set forth in this Release, this is a full and final release in complete settlement of all claims and rights of every nature and kind whatsoever which Employee has or may have against the Company and other Released Parties.  Employee acknowledges that Employee does not have any personal injuries and/or disabilities related to Employee's employment with the Company. Employee further acknowledges that Employee has received all the leave to which Employee is entitled under Company's policies.

2.4    **Waiver**.  Employee waives any right to monetary recovery should any administrative or governmental agency or any other person or entity pursue any claims on Employee's behalf.

2.5    **Representations and Acknowledgments**.    Employee represents and acknowledges the following:

(a)    Employee has been given until _____, **[insert the date that is 21 days after the Separation from Service]** a period of at least twenty-one (21) days from the Separation from Service described in the Agreement, in which to consider this Release. If executed prior to such date, the Employee acknowledges that Employee voluntarily waives the balance of such period.

(b)    The Employee agrees that no change to this Release, whether material or immaterial, will initiate a new twenty-one (21) day period.

(c)    Employee has been advised by Company to consult with an attorney.

(d)    The amounts which are payable under the Agreement which Employee will be receiving in consideration of this Release exceeds the value of anything to which Employee is entitled from Company.

(e)     This Release shall not be effective or enforceable for a period of seven (7) days following the date of Employee's signature below, during which time only, Employee may revoke the Release. Any such revocation must be in writing, signed by Employee and delivered or mailed so as to arrive within such seven (7) day period to Sharrow Engineering, Inc. c/o _____.

(f)     Employee has returned all Company's property to Company.

(g)     Employee has not assigned any rights being released under this Release.

## SECTION 3
## MISCELLANEOUS

**3.1     Binding Effect**. This Release shall be binding upon and inure to the benefit of the Parties and their respective heirs, personal representatives, successors and assigns.

**3.2     Assignment**. Neither this Release, nor any rights or obligations under this Release, may be assigned by any Party without the prior written consent of all other Parties.

**3.3     Complete Agreement**. This Release represents the entire agreement of the Parties, and supersedes any and all prior or contemporaneous agreements, concerning this subject matter, whether written, unwritten, express or implied. The Parties acknowledge that there are no oral representations, understandings, or agreements relating to this Release which are not fully expressed herein.

**3.4     Severability of Provisions**. Any provision of this Release which is determined to be invalid or unenforceable, shall not affect the remainder of this Release, which shall remain in effect, unless the removal of the invalid or unenforceable provision would substantially defeat the basic intent, purpose and spirit of this Release.

**3.5     No Third Party Beneficiary**. The Parties do not intend to confer any benefits under this Release on any other person or entity.

**3.6     Extension, Modification and Waivers**. This Release may be modified or amended only by the written agreement of the Parties. No waiver of any breach of any provision of this Release shall constitute a waiver of any preceding or succeeding breach of the same provision. No extension of the time for performance of any obligation or other act shall be deemed to be an extension of the time for the performance of any other obligation or any other act.

**3.7     Governing Law**. This Release shall be governed by and construed pursuant to the laws of the State of Michigan, regardless of where the Parties may reside.

**3.8     Counterparts**. This Release may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Release. The counterparts of this Release may be executed and delivered by facsimile or other electronic means by any of the Parties to any other party and the receiving party may rely on the

receipt of such document so executed and delivered by facsimile or other electronic means as if the original had been received.

## SECTION 4
## SIGNATURES

The Parties have signed this Release on the dates indicated below and this Release shall be effective when it is no longer subject to revocation by the Employee.

Company:                                 Employee:

By: _____**SAMPLE**_____      By: _____**SAMPLE**_____
    _____               Robert Morehardt
Its: _____            Dated: _____
Dated: _____

18